SAMUEL F. SORSBY and WIFE v. CYPRESSA C. VANCE.

1. WILLS: COSTRUCTION OF.—In the construction of wills, the main object is to ascertain the intention of the testator : the intention is to be gathered from the whole will, and, if legal, is to be carried out, notwithstanding it may violate technical rules, which relate to the construction of words rather than the nature of the estate.

2. SAME.—Technical rules of law, and the authority of adjudged cases, are not to be disregarded in the construction of wills ; yet the true interpretation of a will is so dependent upon the language and circumstance of each particular instrument, that adjudged cases are of less authority, and are more hazardous in their application than on any branch of the law.  See 4 Kent Com. (9 Edit.) 631.

3. SAME : CASE IN JUDGMENT.—The testator, by the first item of his will, gave to his wife and executrix his plantation and " all his slaves, after the payment of the legacies bequeathed."  By the second item, he directed " that his plantation should be kept up, and the slaves and stock kept together on the same, and that the proceeds should be appropriated to the support of his family, and the education of his children."  By the third item, he bequeathed to each of his three children, ten slaves of average quality, with the whole lot, to be delivered " as they respectively arrive of age, or marry."  And further, " that each one of his children, as they respectively arrive at age or marry, receive one-fourth part of all the residue of his estate, that may have been on hand at the time the eldest arrived of age, and not heretofore disposed of by special legacies, and a small legacy hereinafter mentioned ; all the rest and residue he gives to his wife."  After testator's death, several crops were raised, by which the value of the estate was increased, and then his eldest daughter arrived at full age. Held, that she was entitled, in addition to the ten slaves, to distribution of one-fourth part of the residue of the estate (slaves and special legacies excepted), as it existed on the day she arrived at majority, and was consequently entitled to distribution in the profits or increased value accruing after testator's death.

APPEAL from the Court of Probates of Panola county.  Hon. Orville Harrisson, judge.

Elisha Q. Vance died in August, 1854, after having made and published his last will and testament, which, after his death, was duly admitted to probate and record, and letters testamentary granted to his executrix, the appellee.  By his will, he provided as follows :—

"First. I give and bequeath to my wife, Cypressa C. Vance, the plantation on which I now reside . . . the same to have at her disposal forever. I also give and bequeath to her all my slaves, and their increase, after she pays off the following legacies, hereinafter mentioned. And it is furthermore my will, that, if I gain a certain tract of land that I purchased, in De Soto county (describing it), that my wife may, at her election, have said last-mentioned tract, by relinquishing her claim to the former.

"Item second. It is my will, that the plantation selected by my wife shall be kept up; that the slaves and stock be kept together on the same, and the proceeds thereof, to be appropriated to the support of the family, and the education of the children.

"Thirdly. It is my will, that each of my children, to wit, Martha, John, and Calvin, as they respectively arrive of age, or marry, receive from my wife, ten slaves each; the same to be average slaves of the lot then in possession of my wife, and bequeathed to her, subject to these legacies. It is further my will, that my children each have a good classic education, and my sons a profession, each to be selected by them, if they desire the same, and the expenses to be paid out of my estate, or .the proceeds thereof, independent of the legacies herein contained. *It is my further will, that each one of my children, as they arrive of age or marry, receive one-fourth part of all the residue of my estate, real and personal, that may have been on hand at the time the eldest arrived of age, and not heretofore disposed of by special legacies, and a small legacy hereinafter mentioned; all the rest and residue, I give to my beloved wife.*" It is next provided that his executrix purchase a slave for the testator's nephew, Calvin F. Vance, or give him seven hundred dollars in cash. The will then proceeds: "It is further my will, that my executrix have full and ample power to dispose of any portion of my estate, either at public or private sale, as she may think best for the benefit of herself and children, and to invest any surplus cash or property, in that way she may think most advantageous to the estate."

The appellee, Mrs. Vance, was appointed executrix. The will was dated on the 12th of January, A.D. 1850, and in the preamble recites, that the testator was "weak in body."

After the date of the will, and before testator's death, his only

daughter, Martha, married Sorsby. The inventory of the executrix showed that the personal estate was worth $44,160 95, and that the number of the slaves was fifty-eight.

Soon after the testator's death, the executrix delivered to Mrs. Sorsby the ten slaves bequeathed to her by the first paragraph of the third item of the will. Mrs. Sorsby was the oldest child, and arrived at full age on the 20th October, A.D. 1857; and then she and her husband demanded of the executrix a further distribution of one-fourth of the estate (slaves, special bequests, and legacies excepted), as it stood on the day she arrived at twenty-one years of age, including the accretions thereto made since testator's death. This demand was made, under that paragraph of the third item of the will, printed in italics. The executrix insisted that Mrs. Sorsby was only entitled to distribution of one-fourth of said estate (slaves, special bequests, and legacies excepted), which was on hand at the testator's death, and which remained at the date of Mrs. Sorsby's arrival at majority; claiming as her own, and not subject to distribution, all the profits made by planting since the testator's death, and the other profits made, after supporting the family and educating the children.

Sorsby and wife filed a petition, in the court below, to procure distribution according to their construction of the will, and prayed a discovery from the executrix of the accumulation and profits since testator's death. The executrix resisted it, as claimed, and was willing for distribution, on the construction contended for by her; and she declined, in her answer, to make the discovery prayed for. The petitioners excepted to her answer, on the ground of her failure to make the discovery, as prayed for. The exception was overruled. On final hearing, the court below sustained that construction of the will contended for by the executrix, and ordered distribution accordingly; and Sorsby and wife appealed.

*Watson* and *Craft*, for appellants,

Cited *Christian* v. *Christian*, 3 Porter's Rep. 350; *Sullivan* v. *Winthrop*, 1 Sumner R. 12; *Graybill* v. *Warren*, 4 Kelly (Ga.) 528.

*Vance* and *Anderson,* for appellee,

Cited *Finlay* v. *King's Lessee,* 3 Pet. 376 ; *Starke* v. *Smiley,* 12 Ship. (25 Maine) 201 ; 21 Pick. 311 ; 4 Ib. 198 ; *Dingby* v. *Dingby,* 5 Mass. 535 ; *Beck* v. *Montgomery,* 7 How. (Miss.) 39 ; 1 Roper Leg. 343 ; *King* v. *Denison,* 1 Ves. & Beam. 272 ; *Burnett* v. *Strong,* 26 Miss. R. 120 ; *Marrow* v. *Marrow,* Busbee Eq. R. (N. C.) 148.

HARRIS, J., delivered the opinion of the court.

The only question involved in this case is, the true construction of the will of the decedent, E. Q. Vance.

The *intention* of the testator, provided that intention be legal, is the law which regulates the construction of his will. That intention is to be gathered from the whole will, and, from the nature of the subject, overrides all technical rules which relate to the construction of words, rather than the nature of the estate. For though technical rules of law and the authority of adjudged cases are not to be disregarded in the interpretation of wills, yet their construction is so dependent upon the language and circumstances of each particular instrument, " that adjudged cases become of less authority and more hazardous application, than decisions on any other branch of the law." 4 Kent. Com. 9th ed. p. 631.

Looking, then, to the will, and the circumstances indicated in it, we think the general intention of the testator, and his general disposition towards the objects of his bounty, was, first, equality among his children, and 'trust and confidence in his wife as a means of its attainment ; and second, ample provision for his wife.

The first clause of the will gives to his wife a tract of land and all his slaves and their increase, " after she pays off the following legacies," to wit: To each of the children " as they respectively come of age or marry, ten slaves." To each " a good classic education." To the sons " a profession," if they desire it, " the expenses to be paid out of the estate or its proceeds, independent of the legacies therein contained." To each of the children, " as they respectively arrive of age or marry, one-fourth part of all the residue of his estate, real and personal, that *may have been on hand at the time the eldest arrived of age,* and not disposed of by the special

legacies." To Calvin Vance, his nephew, a negro boy, or $700. "All the rest and residue" of his estate, he gives to his wife.

He then gives to his executrix (his wife) full and ample power to dispose of any portion of his estate, as she may think best for the benefit of herself and children, and "to invest any surplus cash in property, as she may think most advantageous to the estate."

Subject to these dispositions, he desires his wife to have not only the lands and negroes specifically devised to her, but also all the residue of his estate. She is to raise and educate their children, to give them each ten slaves as they respectively come of age or marry, and one-fourth part of all the residue of his estate ; that fourth part to be ascertained by looking to the condition and value of the estate, real and personal, not devised specially, when the eldest child comes of age.

If the eldest married before she came of age, she could only have *at that time* the ten slaves, as her remaining "one-fourth" of the estate, could only be ascertained by reference to the condition of the estate at the period fixed by the will, to wit, when she "arrived of age." He intended that the value and condition of his estate at this period, should be regarded and referred to as the standard of equality and division among his children. He did not intend a severance of the interests of the unmarried minors, until the event of marriage or full age; but "as each respectively" attained, to either of these states, he or she should have an equal portion, allotted to the oldest child when she "arrived of age."

He confided the disposition of his whole estate to his wife, subject to these trusts, thereby superadding to her natural duty, the powers, trusts, and authority, imposed by its terms. He intended that his wife and children during minority, should continue as one family, as in his lifetime; that the whole property should be kept together, and its proceeds enjoyed together, for their common support, under the control of the mother, as the natural head, until they respectively arrived of age, thereby making her trusts, and obligations, and rights, under the will, co-existent and co-extensive with her natural duty. And after these several trusts were thus discharged and ended, the land, and negroes, and all the residue of his estate, with its accumulations, *after* the period when the oldest

child arrived of age, were *absolutely* vested in her, the wife, discharged of all trusts.

Regarded in this view, the will is natural, equal, just; beneficent alike to all the children, and still liberal to the wife, and promotive of their best interests and happiness as a family; securing parental authority to the mother while it should exist, and a just portion to each of his children when of age.

While, therefore, the wife's right to the land and slaves vested in interest at the death of the testator, so far as to entitle her to the possession thereof for the execution of the trusts of the will, and to an inchoate right of future enjoyment, they did not vest in her the absolute title and right to their separate and exclusive enjoyment, until after the payment of the legacies and the performance of the trusts, and after the youngest child becomes of age or marries, at which time her interest becomes vested absolutely.

We think, therefore, the court below erred in overruling the exceptions to the answer, so far as the same tended to ascertain from the executrix, the amount and value of the estate on the day the eldest child, Mrs. Sorsby, arrived of age; and also in the construction of the will of decedent.

For these errors, the decree of the Probate Court will be reversed, and cause remanded for further proceedings, in accordance with this opinion.